Filed 11/21/22  Sutton v. Youngman CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| NANCY SUTTON,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARGARET YOUNGMAN,<br><br>    Defendant and Appellant. | 2d Civ. No. B317811<br>(Super. Ct. No. 21CV02734)<br>(Santa Barbara County) |
| NANCY SUTTON,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LOREN YOUNGMAN,<br><br>    Defendant and Appellant. | 2d Civ. No. B317812<br>(Consolidated with No. B317811)<br>(Super. Ct. No. 21CV02733)<br>(Santa Barbara County) |

Margaret and Loren Youngman appeal from an order granting Nancy Sutton's civil harassment restraining orders against them. The Youngmans contend the restraining orders must be vacated because (1) their right to cross-examination was violated when two declarations were not served before the evidentiary hearing, (2) the orders are unnecessary because the alleged harassment ceased before the hearing, (3) there was insufficient evidence of harassment, and (4) the restraining orders are overbroad. We affirm.

FACTUAL AND PROCEDURAL HISTORY

Sutton and the Youngmans are neighbors. In July 2021, Sutton requested a civil harassment restraining order against the Youngmans alleging that they installed outdoor speakers which "daily broadcasted intermittent loud noises throughout the night." Sutton also alleged the Youngmans placed a strobe light in their kitchen window "directly facing [Sutton's] bedroom which intermittently flashed at all hours of the night." In December 2020, the Youngmans allegedly replaced the strobe light and noises with an "amplified telephone ring which would sound outside for 30 seconds on and 30 seconds off every day throughout the day and night." In July 2021, the Youngmans also allegedly installed flood lights that were pointed directly into Sutton's bedroom window and installed a device which broadcasted loud buzzing sounds intermittently.

At the evidentiary hearing, Sutton presented evidence, including eight declarations, photographs, and a flash drive containing 99 videos documenting the disturbances. The court allowed the Youngmans the opportunity to cross-examine Sutton's declarants regarding their declarations.

The Youngmans did not receive the declarations of Kathleen Hunt and Dino Ohanian before the hearing. With respect to Hunt, the trial court observed that the declaration was "very short" and allowed the Youngmans to "take a few minutes to read it" before asking Hunt any questions. The Youngmans did so and asked Hunt several questions about her declaration. The court also asked Hunt one question. With respect to Ohanian, the court asked the Youngmans if they were ready to ask questions and asked if they needed "to take a few minutes to clear your thoughts" and "go to the lobby." Mr. Youngman responded: "No. I'm okay." The court also suggested, "when it's your time to put on your case, you might want to tell me your side of this dispute. Would you like to do it that way or did you want to ask [Ohanian] any questions?" Mrs. Youngman proceeded to ask Ohanian several questions. The next day, the court allowed the Youngmans to make a statement regarding the credibility of Hunt and Ohanian. The hearing proceeded with the presentation of the Youngmans' case.

At the conclusion of the hearing, the trial court ruled in favor of Sutton. The court stated, it "seems clear that [the Youngmans] were harassing [Sutton] the way the phone is in the window, the noises that are coming out of the devices. It's sort of shocking. . . . Usually neighbor disputes arise from misunderstandings of what the neighbors are doing, but in this case it seems clear that it's deliberate express harassment. . . . [¶] And I think one of the reasons why the case didn't settle is that [the Youngmans] are just not willing to come clean even though the evidence presented in open court is obvious that that's what [the Youngmans are] doing." The court found that "the Youngmans have engaged in a course—a knowingly and willful

3

course of conduct directed at Ms. Sutton.  I find that it seriously alarms, annoys, and harasses her and serves no legitimate purpose.  [¶]  I did not find the Youngmans credible in their explanations for the constant repetitive noise and I do think it's reasonable for a person to be suffering from that."

The court reasoned: "I feel like—if you're not willing to come clean and say, 'What we did was wrong.  We apologize.  We won't do it again.  We were upset about these things,' then I would agree with Ms. Sutton that there's no guarantee that you won't do it again as soon as you walk out the court door.  [¶]  So an order is necessary."

The trial court granted a three-year restraining order, prohibiting the Youngmans from harassing, disturbing the peace, and contacting Sutton.  The court ordered the Youngmans to stay at least three yards away from Sutton and her home and car.  The court also issued an additional order to "stop all noise and light disturbances.  Noise disturbances which are broadcasted by devices including but not limited to telephone ringing, buzzing, alarms, animal sounds, podcasts.  Light disturbances like strobe and flood lights directed at [Sutton's] bedroom window."

DISCUSSION

*Deficiencies in the brief*

As Sutton observes, the opening brief fails to include legal analysis and does not contain any citation to case authority.  "Whether legal or factual, no error warrants reversal unless the appellant can show injury from the error."  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.)  "[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis."  (*Id.* at pp. 286-287.)  "[W]e may disregard conclusory arguments that are not

4

supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [they] want[ ] us to adopt." (*Id.* at p. 287.)

Because the brief fails to include proper legal analysis, we may disregard the arguments. (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 ["To the extent [a party] perfunctorily asserts other claims without development . . . , they are not properly made, and are rejected on that basis"].)

Despite the deficiencies in the brief, we nonetheless review the challenge to the restraining orders on the merits.

*Right to cross-examination*

The Youngmans contend their due process and Sixth Amendment right to cross-examination was violated because of Sutton's failure to serve Hunt and Ohanian's declarations before trial. We disagree.

First, the Sixth Amendment right to confront witnesses only applies in criminal proceedings. (U.S. Const., 6th Amend.) "Although parties in civil proceedings have a right to confrontation under the due process clause, '[t]he Sixth Amendment and due process confrontation rights are not coextensive. [Citation.] Due process in a civil proceeding "is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings." [Citation.]' [Citation.] In civil proceedings such as this one, ""[d]ue process requires only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure."' [Citation.]' [Citation.]" (*People v. Bona* (2017) 15 Cal.App.5th 511, 520.)

Here, there was no due process violation. Although Sutton did not serve two declarations before the hearing, the Youngmans were given an opportunity to review the declarations and to cross-examine both declarants at the hearing. The court also offered them additional time for Ohanian's declaration. The Youngmans also presented a statement regarding each of the declarants' credibility.

In any event, the Youngmans do not show prejudice as a result of Sutton's failure to timely serve the declarations. "The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice." (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82; Cal. Const. art. VI, § 13.) Here, the Youngmans make no attempt to show prejudice. Ohanian and Hunt were only two of the eight declarations in support of the restraining order. Sutton also presented other evidence, including a flash drive with almost one hundred videos documenting the noise and light disturbances. Because of the overwhelming evidence in support of the restraining orders, we conclude there was no prejudice.

*Sufficiency of evidence*

The Youngmans contend there was insufficient evidence to support the trial court's finding of harassment. We disagree.

"Harassment" is defined as "[1] unlawful violence, [2] a credible threat of violence, or [3] a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (Code of Civil Procedure, § 527.6, subd. (b)(3).) Before issuing a restraining order against a person, the trial court is required to find the harassment by clear and convincing evidence. (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207

6

Cal.App.3d 719, 730.) We review issuance of a civil harassment restraining order for abuse of discretion, and the factual findings necessary to support the protective order for substantial evidence. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 (*O.B.*).) "'We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings.'" (*Parisi*, at p. 1226.)

Substantial evidence supports the finding that the Youngmans knowingly and willfully engaged in conduct directed to alarm, annoy, or harass Sutton. Here, the court considered evidence, including eight declarations, photographs, and a flash drive with 99 videos, many of which documented the harassing behavior. The court also found Sutton more credible than the Youngmans, telling them, "I didn't believe you at all" and "I did not find the Youngmans credible in their explanations for the constant repetitive noise." The court found it was "obvious" that the Youngmans' conduct was "deliberate express harassment." Because we must accept the court's credibility findings and cannot reweigh the evidence, we accept the trial court's resolution of conflicting evidence. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786; *O.B.*, *supra*, 9 Cal.5th at p. 1008.)

*Necessity of the restraining order*

The Youngmans argue the restraining order is unnecessary because the alleged harassment ceased before the hearing and there was no threat of future harm. This argument lacks merit.

Here, the trial court concluded a restraining order was "necessary" because it found the Youngmans presented a threat of future harm. Because Sutton and the Youngmans are

7

neighbors, substantial evidence supports this finding. (See *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499-501 [trial court's implied finding that harassment was likely to recur was proper because petitioner, who was the principal of the school that defendant's child attended, would likely have future interactions with defendant]; *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 403 [restraining order is intended to prevent future harassment, not to punish past harassment].) As the court observed, the Youngmans refusal to "come clean" and admit their wrongdoing showed there was "no guarantee" they would not harass Sutton in the future.

*Overbreadth of the order*

Lastly, the Youngmans contend that the following order was overbroad: "A stop to all noise and light disturbances. Noise disturbances which are broadcasted by devices including but not limited to telephone ringing, buzzing, alarms, animal sounds, podcasts. Light disturbances like strobe and flood lights directed at [Sutton's] bedroom window."

A restraining order is unconstitutionally overbroad if it impacts the restrained person's constitutional rights more than reasonably necessary to protect the aggrieved party. (See *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 407; *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 22.)

We conclude that the order is not overbroad given the court's finding there was clear and convincing evidence that the Youngmans harassed Sutton. The order specifically prohibits "noise and light *disturbances*." It further specifies noise disturbances as those that are "*broadcasted* by devices," and the order defines light disturbances as lights that the Youngmans directed at Sutton's window. (Italics added.) The order also lists,

8

as examples, the types of disturbances the Youngmans previously used to harass Sutton.  The order thus does not prohibit the Youngmans from receiving phone calls or otherwise using their property in a lawful and peaceful manner.  The order does not prohibit more than reasonably necessary to prevent future harassment—which is the purpose of Code of Civil Procedure section 527.6.  (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412.).

DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Stephen Foley, Judge

Superior Court County of Santa Barbara

_____

Law Offices of Scott H. Bentley and Scott H. Bentley for Defendants and Appellants.

Nancy Sutton, in pro. per., for Plaintiff and Respondent.